UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:15-cr-115 |
| v. ) | |
| ) | Judge Travis R. McDonough |
| HAROLD THOMPSON ) | |
| ) | Magistrate Judge Christopher H. Steger |
| ) | |

## MEMORANDUM OPINION

Defendant filed a motion to suppress evidence obtained during a search of Defendant's residence pursuant to a search warrant. (Doc. 8.) The Court referred the motion to Magistrate Judge Christopher Steger for a hearing and a report and recommendation. (Doc. 10.) The Government filed a response opposing Defendant's motion. (Doc. 11.) Magistrate Judge Steger held a hearing on the motion (Doc. 15) and filed a Report and Recommendation ("R&R") recommending that the Court deny the motion to suppress (Doc. 17). Defendant timely objected (Doc. 18), and the Government responded (Doc. 20). For the reasons set forth below, the Court will **ACCEPT** and **ADOPT** the R&R. (Doc. 17.)

I.  BACKGROUND

The following recitation of the facts is taken from the Magistrate Judge's R&R.[1] On April 8, 2014, Special Agent Ryan Mullins of the Homeland Security Investigations' Cyber Crime Center and seven other agents went to Defendant's residence to execute a search warrant for devices suspected of containing child pornography. The agents arrived at the residence at 6

---

[1] It does not appear that Defendant challenges the Magistrate Judge's factual findings except to the extent that the Magistrate Judge found that the agents' actions were not intentional.

a.m. Defendant answered the door, and Mullins explained to him that the agents were there to execute the search warrant. Mullins asked whether Defendant had any firearms on the premises. Defendant responded that he did and told the agents that the firearms were in the closet. Mullins explained that he did not intend to seize the firearms, but that he needed to secure the firearms for the safety of all involved in the search.

The other agents began securing the firearms and conducting the search, and Mullins sat down with Defendant at the kitchen table. Mullins wrote the case number, date, and the time of "0602 hrs" on the search warrant return. In the boxes labeled "Copy of Warrant and inventory left with:," and "Inventory made in the presence of:" Mullins wrote "Harold Thompson." When Mullins asked Defendant whether he would give a statement, Defendant responded that he would, and Mullins produced a waiver of rights form. Defendant signed this form, and Mullins dated it "04/08/14."

After the agents had cleared the guns from the closet, Mullins asked Defendant whether "that was all" with respect to the firearms in the house. Defendant responded that it was. As agents progressed throughout the house, however, they continued to find more and more loaded firearms. After each new discovery, Mullins would again question Defendant whether "that was all" and each time Defendant would respond that that was indeed all of the firearms. Nonetheless, the discoveries continued. Agents would eventually go on to find loaded firearms in every room of the house. Furthermore, these firearms had been "staged" for use—hidden throughout the house such that in any given location within the house Defendant would have been no more than a few steps away from a loaded firearm. Loaded firearms were found tucked between the cushions of the living room couch, on the floor beside a recliner, and inside a covered dish in the kitchen.

As the discoveries mounted, and Mullins became increasingly aware that Defendant was not being truthful, Mullins became alarmed. Mullins's focus shifted to what he needed to do to ensure the safety of his agents.

As the agents finished their search, they placed the collected evidence in the dining room. Special Agent Benda Dickson, a property custodian with the Department of Homeland Security, hand-wrote, in Defendant's presence, an inventory of the seized items. Dickson then copied over this list onto another piece of paper. While Dickson testified at the hearing that she did not remember whether she had given one of these inventories to Defendant, she did testify that her normal practice would have been to do so. Mullins gave Defendant the search warrant and the original return indicating that the search had taken place at 0602 hours, but he neglected to sign and date the return and failed to indicate that there was a separately written inventory of seized property.

Upon return to the office, Mullins did not immediately prepare and deliver a return for the Court. He intended to wait until agents had completed their forensic search, but when that proved to be more time consuming than expected, the AUSA assigned to the case told Mullins to go ahead and file a return with the information that he had.

Although Mullins's normal practice was to bring two copies of the return with him, Mullins mistakenly brought only one warrant and return with him to search Defendant's residence. He completed a second return at some point after he returned to his office. He did not remember the exact time that he executed the warrant and so he wrote the time as 0605 hrs rather than 0602 hrs. Using Dickson's handwritten inventory created in Defendant's presence, Mullins prepared a typewritten inventory which is identical in all meaningful respects to the handwritten inventory. On the search warrant return form he wrote in "See Attached Inventory." Mullins

3

was further delayed in filing the return with the Court. On May, 7, 2014, Dickson filed the return at Mullins' request using the form and inventory created by Mullins. Dickson signed and dated the return.

## II. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## III. ANALYSIS

Defendant objects to Magistrate Judge Steger's recommendation that the evidence not be suppressed for failure to comply with Federal Rule of Criminal Procedure 41(f)(1). Rule 41(f) provides, in relevant part,

> **(A) Noting the Time.** The officer executing the warrant must enter on it the exact date and time it was executed.
>
> **(B) Inventory.** An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken. If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person. In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored information, the inventory may be limited to describing the physical storage media that were seized or copied. The officer may retain a copy of the electronically stored information that was seized or copied.

> **(C) Receipt.** The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.
>
> **(D) Return.** The officer executing the warrant must promptly return it--together with a copy of the inventory--to the magistrate judge designated on the warrant. The officer may do so by reliable electronic means. The judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant.

Fed. R. Crim. P. 41(f)(1). While "the procedural steps enumerated in Rule 41(d) are important and should not be disregarded, they are ministerial" and thus do not automatically void an otherwise valid search. *Frisby v. United States*, 79 F.3d 29, 32 (6th Cir. 1996). Violations of Rule 41 generally do not result in suppression unless "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Searp*, 586 F.2d 1117, 1125 (6th Cir. 1978) (quoting *United States v. Burke*, 517 F.2d 377 (2d Cir. 1975)).

> Defendant argues that the agents failed to comply with Rule 41 in the following respects:
>
> 1. Agent David Ryan Mullins, the officer that executed the search warrant, testified that he failed to sign or date the warrant and return form that he gave to Mr. Thompson.
>
> 2. Agent Mullins testified that he failed to indicate that there was a written inventory of seized property on the warrant and return form given to Mr. Thompson.
>
> 3. Agent Mullins testified that he did not promptly prepare and deliver a return to the Court. Instead, Agent Mullins admitted that, almost one month after the search, he filled out a different return form and instructed Agent Dickson to sign and submit it to the Court.
>
> 4. Agent Mullins testified, and the Government conceded, that a third warrant return was provided to the Defendant in discovery.

(Doc. 18, at 2–3.)  Magistrate Judge Steger recommended denying the motion to suppress finding that the agents' Rule 41 violations were not intentional.  (Doc. 17.)  Defendant objects to that determination.  He argues that "law enforcement's intentional and deliberate concoction of three separate and distinct warrant returns" indicates that the violations were intentional and deliberate.  (Doc. 18, at 4.)

The Court agrees with Magistrate Judge Steger's determination.  While there were multiple returns submitted in this case, the differences are not at all material and there are no credible allegations that these minor discrepancies prejudiced Defendant.  Rather, the alleged errors here appear to be the result of mere human mistakes.  The agents were understandably distracted by the repeated discovery of loaded firearms throughout the house after repeatedly being told that there were no more firearms.  Magistrate Judge Steger determined that their explanations of the irregularities were credible and that there was no basis for finding that any violation was intentional.  (Doc. 17, at 7.)  As the Sixth Circuit has held, the Magistrate Judge's assessment of witnesses' testimony is entitled to deference because he had the opportunity to observe and hear the testimony.  *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

The cases to which Defendant cites as examples of where suppression is warranted involved much more flagrant violations of Rule 41.  In *United States v. Choi* for example, the Customs agents executing the search warrant were trained not to abide by the requirements Rule 41 and so the Ninth Circuit held that the rule violation was intentional and deliberate and thus warranted suppression.  185 F.3d 869, 1999 WL 386660, at *2 (9th Cir. May 21, 1999). Similarly, in *United Sates v. Slaey*, evidence showed that higher government officials directed the law enforcement agent completing the search not to leave a complete copy of the warrant with the defendant.  433 F. Supp. 2d 494, 498 (E.D. Pa. 2006).  In finding that suppression of the

evidence was not warranted, the court in *Slaey* expressly contrasted that case with a case where "an agent, at the end of a busy day searching SIM's office, simply forgot to leave the warrant." *Id*.

There is no allegation that Mullins or Dickson were trained in such a way that they would consistently violate Rule 41. Nor is there any evidence that the agents were directed to commit the violations alleged here. All of the evidence presented tends to show that any violation was the result of a mistake. Because inadvertent errors that cause no discernible prejudice to the defendant do not warrant suppression, the Court will **ACCEPT** and **ADOPT** the Magistrate Judge's R&R and **DENY** the motion to suppress.

## IV. CONCLUSION

For the foregoing reasons, the Court will **ACCEPT** and **ADOPT** the Magistrate Judge's R&R and **DENY** the motion to suppress. A separate order will enter resetting the schedule in this case.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**